UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICIO MONTANO,<br><br>Plaintiff,<br><br>v.<br><br>G. GALAZA, et al.,<br><br>Defendants. | CV F- 03-5891 AWI DLB P<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT IN PART WITH LEAVE TO AMEND<br><br>AMENDED COMPLAINT OR OBJECTIONS DUE 7/9/07<br><br>[Doc. 57 and 59] |

Plaintiff is a state prisoner proceeding pro per and in forma pauperis with a civil rights action pursuant to 42 U.S.C. section 1983.  Pending before the Court is defendants' motion to dismiss plaintiff's amended complaint, filed on September 21, 2006.

I.  Background

Plaintiff is a wheelchair bound inmate who alleges that, because of his disability, he was denied regular access to the law library, the exercise yard, and a cell partner during his incarceration in the administrative segregation unit at Corcoran State Prison.  Plaintiff brings this action under the Equal Protection Clause and the Americans with Disabilities Act, seeking monetary damages.   By order filed July 16, 2004, this court dismissed plaintiff's compliant.  Plaintiff filed an appeal with the Ninth Circuit Court of Appeals.  On July 20, 2005, the Court of Appeal vacated this court's order and remanded, granting plaintiff leave to amend his complaint.  Plaintiff filed an amended complaint

on August 31, 2005.  With the exception of his request for damages, the amended complaint alleges

claims virtually identical to plaintiff's first compliant.[1]  On April 10, 2006, the Court directed the

United States Marshals to effect service on defendants Galaza, Scribner, Marshall, Dill, and

Rousseau.  On, September 21, 2006, defendants Galaza, Scribner, Marshall, Dill, and Rousseau filed

the instant motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  Plaintiff requested an extension to file a response to defendant's motion

on October 10, 2006.  Upon review of the motion, the court will grant defendant's motion in part and

give plaintiff leave to amend his complaint.  Therefore, plaintiff's motion for an extension is moot.

II.  Motion to Dismiss Standard

    In considering a motion to dismiss for failure to state a claim, the Court must accept as true

the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion,

and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied,

396 U.S. 869 (1969).  Pro se pleadings are held to a less stringent standard than those drafted by

lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure to state a

claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in

support of the claim that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69,

73 (1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt

Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

III.  Equal Protection Claim

    Defendants argue that plaintiff fails to state an equal protection claim because he fails to

allege that he was treated differently from similarly situated inmates, and that he fails to allege that

defendants acted with the requisite discriminatory intent.

    "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall

---

[1] Section V of the amended complaint filed August 31, 2005, indicates plaintiff is suing the
defendants in their individual and official capacities for money damages and attorneys fees.  However,
in section V of the initial complaint filed on June 31, 2003, plaintiff is requesting that defendants cease
the discrimination and that he be compensated for the emotional and mental stress he has suffered.

1  'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

2  direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne

3  Living Center, 473 U.S. 432, 439 (1985).  Plaintiff must allege that defendants treated him

4  differently than similarly situated inmates.  Plaintiff alleges that defendants denied him access to the

5  law library, outdoor exercise, a table in his cell, and a cell partner and that these privileges were not

6  denied to "walking inmates."  Defendants argue that plaintiff must establish that defendant treated

7  him differently than other wheelchair bound inmates housed at the Corcoran administrative

8  segregation unit.  See, Defendants' Motion to Dismiss at pg. 5.

9        In determining whether a disabled inmate is similarly situated to non-disabled inmates, the

10  court must determine "whether the disabled plaintiff is equally capable for the purpose at issue."

11  Reed v. Reed, 404 U.S. 71 (1971) (a classification must rest upon some ground having a fair and

12  substantial relationship to the object of the case); Hansen v. Rimel, 104 F.3d 189-90 (8th Cir. 1997)

13  (hearing-impaired inmate could not use a regular telephone and was not equally capable of accessing

14  a standard telephone, and therefore was not similarly situated to hearing inmates); Clark v. State of

15  California, 1998 WL 242688 (N.D. Cal. 1998) (developmentally disabled inmates lacked skills to fill

16  out forms, limiting their access to medical care and education programs, were not similarly situated

17  to non-developmentally disabled inmates for equal protection purposes); Crayton v. Terhune, 2002

18  WL 31093590 (N.D. Cal. 2002) (paraplegic inmate in wheelchair was not equally capable of

19  accessing the law library and therefore not similarly situated for equal protection purposes); But cf,

20  Moore v. Farrier, 984 F. 2d 269, 271 (9th Cir. 1993) (inmates in wheelchairs were equally capable

21  and thus similarly situated to nondisabled inmates for the purpose of watching television).

22        In the instant case, plaintiff must show that in denying him access to the law library, outdoor

23  exercise, a table, and a cell partner, defendants treated him differently from walking inmates in the

24  administrative segregation unit at Corcoran State Prison.   He must also show that he is equally

25

26

27

28

1  capable for the purposes at issue.[2]  Plaintiff has alleged that he was treated differently than "walking

2  inmates," but has failed to allege that was equally capable for the purposes at issue in each of his

3  claims. Therefore, defendants' motion to dismiss on this issue is granted however, plaintiff will be

4  given leave to amend his complaint to cure this defect for each of the equal protection claims.

5        In order to state a § 1983 claim based on a violation of the equal protection clause of the

6  Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination

7  against a class of inmates which included plaintiff. Barren v. Harrington, 152 F.3d 1193, 1194 (9th

8  Cir. 1998), cert. denied 525 U.S. 1154 (1999); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d

9  465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

10  "'Discriminatory purpose . . . implies more than intent as volition or intent as awareness of

11  consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of

12  action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable

13  group.'" Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) citing Personnel Adm'r of

14  Massachusetts v. Feeney, 442 U.S. 256, 279 (1979).  .  "Intentional discrimination means that a

15  defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345

16  F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir.

17  1994)) (emphasis in original).  "Where the challenged governmental policy is 'facially neural,' proof

18  of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it

19  tends to show that some invidious or discriminatory purpose underlies the policy." Lee, 250 F.3d at

20  687 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (264-66) (1977)

21  (internal citations omitted)).  "The mere fact that [a] facially neutral polic[y] had a foreseeably

22  disproportionate impact on an identifiable group does not mean that [it] violated the Equal Protection

23  Clause." Id. at 687.

24        In the instant case, plaintiff alleges that defendants' actions had a discriminatory impact, in

25

26        [2] The court recognizes that the it held that plaintiff must show that defendants treated him
differently than other wheelchair bound inmates in its' order dated May 18, 2004.  However, upon
27  further review of plaintiff's amended complaint, plaintiff must show that he is similarly situated to
walking inmates for the purposes of each claim.

28

that his access to the library, exercise yard, a table in his cell and cell partner were limited.  Plaintiff

does not allege that defendants' actions were motivated by discriminatory animus toward him on the

basis of his disability.  Purposeful discrimination is an essential element of an equal protection claim.

Gutierrez v. Municipal Court of the Southeast Judicial District, 838 F. 2d 1031, 1047 (9th Cir. 1988).

Therefore, defendants' motion to dismiss on this issue is granted; however, plaintiff will be given

leave to amend his complaint to cure this defect for each of the equal protection claims.

IV.  ADA Claim

Plaintiff alleges that defendants violated his rights under the Americans with Disabilities Act

(ADA).  Title II of the Americans with Disabilities Act provides that:

> No qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or denied the benefits of
> the services, programs, or activities of a public entity, or be subjected
> to discrimination by any such entity.

42 U.S.C. § 12132.  Title II of the Americans with Disabilities Act (ADA) and § 504 of the

Rehabilitation Act (RA) "both prohibit discrimination on the basis of disability."  Lovell v.

Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be subject to

discrimination by such entity."  42 U.S.C. § 12132.  Section 504 of the RA provides that "no

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.  Title II of the

ADA and the RA apply to inmates within state prisons.  Pennsylvania Dept. of Corrections v.

Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir.

1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

discriminated against with regard to a public entity's services, programs, or activities; and (3) such

exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

Plaintiff's amended complaint does not indicate that he was deprived services or access to facilities based solely on his disability.  For example, he indicates that outdoor recreation and library access were denied because they were in use by others at the time.  Similarly, he alleges that his cell only has a single bunk which may be another explanation for his lack of a roommate.  Finally, plaintiff has not indicated that the fact that he does not have a table in his cell is based solely on his disability.   Therefore, defendant's motion to dismiss will be granted; however, plaintiff will be given leave to amend his complaint.   Plaintiff is also advised that to recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

V. Due Process

Plaintiff has not explicitly raised a due process claim in his complaint; however, he has named defendants Marshal and Dill in the amended complaint as the individuals who denied his appeals.  Accordingly, the court construes this claim as an allegation of a due process violation.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive

1    right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v.

2    DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th

3    Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance

4    procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure

5    confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence,

6    it does not give rise to a protected liberty interest requiring the procedural protections envisioned by

7    the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F.

8    Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve

9    as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

10        Defendants' actions in responding to plaintiff's appeal, alone, cannot give rise to any claims

11   for relief under section 1983 under a due process violation. Accordingly, defendants' motion to

12   dismiss will be granted.

13   VI. Qualified Immunity and the *Armstrong* Remedial Plan and Consent Decree

14        Defendants argue that they are immune from any damages liability because under the

15   qualified-immunity doctrine they have not violated any clearly established law including the ADA.

16   As a basis for the argument, defendants also argue that plaintiff's claim is barred by the Armstrong

17   consent decree and remedial plan, because he is a member of the class of inmates represented

18   therein. In 1994, an Americans with Disabilities Act/Rehabilitation Act federal action was filed on

19   behalf of all present and future California state prisoners and parolees with mobility, sight, hearing,

20   learning, and kidney disabilities. Armstrong v. Davis, No. CV 94-2307 CW (N.D. Cal.). The

21   Armstrong court found that defendants violated the ADA and the Rehabilitation Act, and entered a

22   remedial order on September 20, 1996, requiring implementation of the Department of Corrections

23   (CDC) Disability Placement Plan (DPP). (Order, dated September 20, 1996, Defs.' Exhibit A). The

24   Armstrong Remedial Plan sets forth a policy to provide access to the CDC's programs and services

25   to inmates and parolees with disabilities, with or without reasonable accommodation, consistent with

26   legitimate penological interests. (Remedial Plan, dated January 8, 1999, Defs.' Ex. B). The

27   Remedial Plan specifies that no qualified inmate or parolee with a disability shall be subjected to

28

discrimination because of their disability.  (Defs.' Ex. B, at p. 1).  The Remedial Plan applies to all

of the CDC's institutions and facilities, whether or not the disabilities impact placement.  (Id.).  The

Remedial Plan has provisions for special housing placements, including administrative segregation

units.  (Defs.' Ex. B, at pp. 18-19).  The Armstrong Remedial Plan was most recently amended on

January 3, 2001 and remains in effect.  On March 21, 2001, the Armstrong court entered a permanent

injunction providing as follows:

> THE COURT SHALL retain jurisdiction to enforce the terms of this
> injunction in accordance with the law.  If Plaintiffs' counsel have
> reason to believe that Defendants are not complying with the terms of
> this injunction, they shall notify Defendants.  The parties shall attempt
> to resolve the issue informally before pursuing any judicial remedy.
> Upon appropriate motion, the Court may issue any order, including
> contempt, necessary to ensure that Defendants comply with the
> injunction.

(Permanent Injunction Order, dated March 21, 2001, at Defs.' Ex. C)

Government officials enjoy qualified immunity from civil damages unless their conduct

violates "clearly established statutory or constitutional rights of which a reasonable person would

have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified

immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v.

Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask

whether the right was clearly established.  Id.  In resolving these issues, the court must view the

evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of

plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity protects

"all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475

U.S. 335, 341 (1986).

In this case, plaintiff has not indicated what dates that the alleged incidents occurred.  As

such, is difficult to determine whether the incidents occurred prior to, or after any of the Armstrong

orders which may affect the viability of the qualified immunity defense.  Further, given the court's

ruling on the other issues in this case, the issue of qualified immunity may be moot.  Accordingly,

1   the court denies defendants' motion without prejudice. The plaintiff is advised that he must include

2   the dates of the alleged incidents in any amended complaint.

3   VII.  Pleading Standards

4          The federal system is one of notice pleading. Galbraith v. County of Santa Clara, 307 F.3d

5   1119, 1126 (2002). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with

6   limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A.,

7   534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a

8   short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ.

9   Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim

10  is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.

11         Plaintiff is advised that an amended complaint be complete in itself without reference to any

12  prior pleading. As a  general rule, an amended complaint supersedes the original complaint. See

13  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the

14  original pleading no longer serves any function in the case. Therefore, in an amended complaint, as

15  in an original complaint, each claim and the involvement of each defendant must be sufficiently

16  alleged.

17         The statute plainly requires that there be an actual connection or link between the actions of

18  the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.

19  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The

20  Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right,

21  within the meaning of section 1983, if he does an affirmative act, participates in another's

22  affirmative acts or omits to perform an act which he is legally required to do that causes the

23  deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

24  Plaintiff was advised in the court's last order that to state a claim for relief under section 1983,

25  plaintiff must link each named defendant with some affirmative act or omission that demonstrates a

26  violation of plaintiff's federal rights. While plaintiff makes broad allegations in the instant

27  complaint, he failed to link the alleged violations or acts of discrimination to particular defendants.

28

1   Plaintiff is advised that any future pleading should be amended in accordance with this order.

2   VII.  Conclusion

3       Accordingly, it is HEREBY RECOMMENDED that:

4       1.  Defendants' motion to dismiss plaintiff's due process claims are GRANTED;

5       2.  Defendants' motion to dismiss based on qualified immunity is DENIED without

6   prejudice;

7       3.  Defendant's motion to dismiss plaintiff's equal protection, ADA, and RA claims are

8   GRANTED with leave to amend;

9       4.  Plaintiff's motion for an extension of time is denied as moot;

10      5.  Plaintiff shall file any second amended complaint in this action, by July 9, 2007.

11      These findings and recommendations will be submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  If plaintiff determines

13  that he does not want to file an amended complaint, he may file written objections to these findings

14  and recommendations with the court by July 9, 2007.  The document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

16  failure to file objections within the specified time may waive the right to appeal the District Court's

17  order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19      IT IS SO ORDERED.

20      Dated:   **June 26, 2007**        **/s/ Dennis L. Beck**
                        UNITED STATES MAGISTRATE JUDGE